Mr. Jackson, you have five minutes, but you reserve a minute for rebuttal, so that gives you four to begin. You may start. Thank you, Your Honor. And good morning, Your Honors. May it please the Court. Your Honors, this case presents nothing less than the question of whether or not a convicted defendant can ever, under Section 3148A, demonstrate by clear and convincing evidence that he's entitled to bail pending sentencing. In this case, it's almost impossible to conceive of a situation where a defendant could have presented more significant clear and convincing evidence that he was not likely to flee as was required under the statute. He had been on release for three years since the time of his arrest without any evidence that there was ever any attempt on his part to flee or to even contemplate it. But he has been convicted, 16 counts, and is facing, undoubtedly, a very long sentence. Well, Your Honor, he was convicted. I think the 16 counts slightly overcomplicates the scenario. There were, effectively, some counts where there were multiple counts, like the money laundering, substantive counts. He was acquitted of substantive. But he was convicted of several counts. Well, the government calculates it as 188 months going up, and then apparently there's a mandatory minimum, a mandatory consecutive sentence of two years. So it's a substantial sentence he's facing. Why doesn't that change things? Two things, Judge Chin. First, he's faced the entire time that he was on release, and for the two years that he was aware of the investigation before he was even charged, in which he never fled, the allegations of these substantial amounts. And so he was aware the entire time. But the law changes the presumption, though, after a conviction is secured. That's correct, Judge Carney. And so you have to convince us that Judge Kuntz made a clearly erroneous decision in finding that he now had an incentive to flee, and that he had the means to flee, and that the calculus was different. So what was clearly erroneous? Well, Your Honor, it's the totality of the circumstances. First, it's not clear to us, based on the judge's ruling, what information he was taking into account. As we detail in our brief, there were several different things that the government described, which were just in conflict with the facts of the case. So he had an opportunity to contest those, right? No, Your Honor. We didn't have a sufficient opportunity to contest them. We were able to point out what was incorrect, such as the idea that this defendant had ties to Israel that would aid his flight, when, in fact, all there was in the record was that his family had given money to some educational institution years ago in Israel. There was a suggestion that he had committed perjury. There wasn't a single false statement identified, and there still hasn't been in the course of these proceedings. All of these were facts upon which the district court appeared to rely in making this determination that simply were not in line with the evidence. The judge said that he now had the means and the motive, given the heavy sentence that he faced post-conviction, and I don't recall him relying on a particular element of the several that the government had adduced. And so I'm still looking for what was clearly erroneous in that assessment. Does he have the means? Do you contest that he has the means? I do contest that, Your Honor, and I think the Israel part underscores it. Where would he go? There's no evidence that simply because he has wealth, which makes him analogous to all of the defendants in the cases that we identified, and frankly to his co-defendants, including the cooperating witnesses, the mere fact that he has wealth does not constitute means. I submit that the government highlighted the connections to Israel because they understood they needed to show something more than just the possession of wealth, but some way in which he could deploy it to plausibly flee. And the fact of the matter is, there is no way that he could deploy it to plausibly flee. But your view is it's the government's obligation to show that? No, Your Honor. I think it's our obligation to show that there is evidence that controverts the idea that merely because he has wealth, he's likely to flee. And here, the evidence that we submitted was overwhelming. It was his failure to flee over the course of five years, including two years before he was in charge. No, no, there's no dispute about that. I mean, the issue is that once you've been convicted, your incentives change. And if you have millions or hundreds of millions or more at your disposal, you can get to places that other defendants can't. You can get to places that don't have extradition treaties with the United States. Well, Your Honor. So, I mean, that wasn't, clearly, that wasn't discussed in any kind of detail in the record below. There was discussion about Israel. But I guess I'm trying to figure out, are you saying that it's the government's burden to sort of identify likely countries? No, Your Honor. But they pointed to Israel. Israel, that there are likely, there are countries where one could go and avoid extradition? I don't think that there are countries that a defendant situated, like Mr. Modovich, who has all of his ties in the United States, he doesn't have connections to a foreign government like Venezuela, he has lived within the same eight-mile radius throughout his entire life, and it's here where his family, his four children, his wife, all live in New York. I don't think a defendant like that we should engage in, it's fair to engage in speculation, say he could somehow go to the mountains of Mongolia, when there's no evidence that he has that type of ability to connect and go to one of those places. Particularly because if we look at the list of cases, including the co-defendants here, they have not identified a single defendant situated like Mr. Modovich, who was denied bail pending sentencing. They pointed to the Sabnani case, where the defendants actually got bail pending sentencing and bail pending appeal, in spite of the fact that they were convicted of torturing their employees and engaging in what the district court described as unspeakable acts towards other human beings and had substantial connections to a foreign country. So what we're talking about here, Judge, is the question of, is there anything that a defendant can do who's been convicted of a crime to demonstrate that he's not at risk of flight? If this is not it, I have no idea what it would look like. I mean, it cannot be the case under Section 3148A1 in which Congress codified a desire or an expectation that a defendant, even one who'd been convicted of a crime, would ultimately be able to somehow demonstrate by clear and convincing evidence that he's not likely to flee. It can't be the case that there's absolutely no set combination of information that can overcome that. And the wealth, Your Honor, we just submit for the reasons we laid out in our breach simply does not logically indicate a risk of flight. Can I ask, at some point in your brief, you seem to suggest or at least intimate that Judge Kuntz misunderstood the standard to be applied here. Are you arguing that or not? Your Honor, we're arguing that it's unclear. And, Your Honor, we submit that the district court, we think, listened to argument in this case, and we know that the district court is put in a difficult position when we're talking about a hastily called for bail argument. But on the record, first, the government twice identified the wrong standard. We had to correct the government on what the standard was and what the statute was that applied. And there was never clarity in the record as to whether or not the district court was focused on Section A1 or A2, which the required language leaves ambiguity. Because what's actually required, we think, in the fairest reading of A1 is that Mr. Motovic be released if he can demonstrate by clear and convincing evidence that he's not likely to flee. And that doesn't mean that he has to demonstrate that there's no possibility, that there's no magical carpet somewhere that could get him to some unexplained, un-extraditing country. It just means that he has to demonstrate by clear and convincing evidence that he's not likely to flee, including because the statute incorporates it, the conditions that are set, or can be set, in order to reasonably assure his appearance. And here on this record, we simply don't know whether Judge Klintz was applying the A1 or the A2 standard. Thank you. Well, you've reserved a minute for rebuttal. We'll hear now from you. Thank you. Thank you, Your Honors. Mr. Polamini, am I pronouncing that right? Yes, sir. Good morning, Your Honors. May it please the Court. Robert Polamini, on behalf of the United States. I was the lead trial counsel below. So, did you not understand the standards? Mr. Jackson keeps suggesting you kept citing the wrong statute. While I may have cited to the wrong statute, I think it was pretty clear to everyone what the standard was, Your Honor. After I misstated the statute, everyone agreed that we were looking at 18 U.S.C. 3143. And there was no indication that Judge Klintz was confused as to whether we were looking at A1 or A2. So why do you say there's no confusion about that? Judge, because A2 deals with mandatory, usually violent crimes, and it's a different standard for those types of crimes. And I think Mr. Jackson pointed that out during argument, that we aren't dealing with a violent criminal here. And so the standard is whether or not just by clear and convincing evidence, the defendant has met his burden, that he is not a flat risk. And that was repeated throughout the brief discussion. At one point, the Judicial Court said something like, I'm required to do this, which I think is part of the ambiguity that Mr. Jackson is seizing upon. So what's your read of that part of the transcript? I read that, Your Honor, as Judge Klintz was required to do it because he found that the defense hadn't come forward with clear and convincing evidence to demonstrate that the defendant was not a flat risk. And so under that statute, under A1, he was required to remand the defendant into custody. And that's how I read what Judge Klintz, what he was saying at that point. Judge, I just want to touch on a few points that Mr. Jackson made. This is, the court here has a high burden in terms of overruling Judge Klintz's decision. And I think it's important to really look at the context here. This is not a case where it was a guilty plea and the government remanded. You're making the argument that if this case isn't it, that there can't be any case where a defendant could meet the standard. Well, Judge, I think each case is different. And each case, you know, will turn on its unique facts. And I know Mr. Jackson has repeatedly argued that, well, the defendant showed up each and every time. He was aware of the investigation. He didn't flee. Well, that's every defendant who appears before this court who is asking to be released pending sentencing or to remain at liberty. But there are some folks who have a lot of money who are facing serious time and who nonetheless are not in custody between the guilty verdict and sentencing. And so what is it about this guy that makes him different from other high net worth individuals? Because Mr. Jackson is positing a concern that anybody who is at a certain level of wealth is now presumptively not bailable. And that is a concern, right? Because they have the ability to procure things that poorer people don't. Judge, I don't think Judge Kuntz stated or believes, and there's no indication that he does, that just because someone has immense wealth they are presumptively deemed to be at risk of flight. I think each case turns on its facts. And here from the outset, the government and the magistrate courts and Judge Kuntz has found that this defendant, even prior to trial, was a serious risk of flight. And so when he's a serious risk of flight prior to trial, when he is convicted, as this court well knows and as everyone knows, that presumption flips because the incentives to flee are much greater. No, pretty clearly. But I mean, again, yours leads to sort of a right line rule, it seems to me. So what about the conditions in place before trial would be insufficient after trial? What was the concern that now he would have a different incentive to flee and that those other mechanisms in place were no longer going to do the job? Well, Judge, I'll note that those weren't really argued by the defense below. There's no indication that the 14 insurators are now willing to come forward and to say, well, now that the defendant has been guilty and convicted and faces this immense term in imprisonment, I'm still willing to sign on to these bonds. The defendant himself and his family, he has not put up any property himself. He's relying on others to post some sort of unsecured property. So there's nothing that would bar him from making a new motion? No, there's nothing, and I'll note that Judge, he didn't. And so I don't think Judge Kuntz, and there's no indication that he did, said under no circumstances do I find that this defendant is bailable. The defense decided not to call witnesses. The defense decided not to come forward with additional collateral. The defense decided not to ask for the district court to reopen the proceedings. And so there's nothing precluding the defense from doing so, and perhaps we could revisit it down the road if they decide to do so. Is the sentencing date set? No, Judge, and I'll note that the sentencing date has not been set, and defense has asked for, I believe, an additional two to two and a half months to file their Rule 29 motions and related motions. And so I don't know when sentencing will be. All right. Okay. Thank you very much. Mr. Jackson for a minute or so. Thank you, Your Honor. Just a few things to correct. First, it was definitely argued that the question that you asked Judge Sullivan about the conditions, that was definitely argued by the defense below. We pointed out that there have been 14 shorters, that $20 million have been put up. You're basically asking to continue the conditions already in place. Yes, Your Honor. Right, but you didn't offer any sweeteners or anything. No, Your Honor. We certainly would have been willing to discuss that, but we didn't get an opportunity to raise that. We thought that the conditions were very extensive. I would also note, Your Honor, we haven't asked for 2.5 months. I think we asked for 45 days, an additional 45 days to file Rule 29 motions. It's also the case that some of the defendant's personal property is part of the conditions, is part of the surety here. I mean, one of the defendant's family's Florida homes is encumbered. The government rejected certain of the property that the defendant sought to put up that he has in New York. Some of that property, again, is not in the record. But some of that property might no longer be as valuable as it was before, because some of it may be subject to forfeiture orders, right? Your Honor, I believe that the forfeiture here is going to be much more limited than what the forfeiture may look like in other white-collar cases that Your Honor is dealing with. My point is just, I think, as a matter of logic. You've got a package that has collateral including properties. And post-conviction now, there's a heightened chance that some of that property, at least, will be substitute assets down the line. And so a would-be fugitive might be less worried about leaving that property behind. Your Honor, I respectfully disagree with that. I think what we're talking about here is, even though there's $55 million waved around, this was a zero-loss crime where there was no allegation that the $55 million that went through the accounts that are at issue was anything other than Mr. Motovich's money. A very small percentage of that was interest that he collected from people that he gave the loans to that were considered to be the improper movement of money. This was a central dispute at trial, whether it was a loan or whether it was a movement of money. So we're talking about a few million dollars of what the government has described as a $300 million net worth of the family. The properties here are still going to be properties that the defendant can expect will be important properties. And moreover, his friends and family, including his rabbi, have put up their property. They're simply, it's difficult to conceive of a defendant with closer ties to the community than this defendant. His entire life has operated in this eight square miles in Brooklyn and in New York. His minor children are here. So what we're talking about, Your Honor, is a situation where all of this evidence was effectively disregarded based on what we submit for the reasons we outlined in our brief were really questionable proffers. And in this situation here, the district court's order, while the district court was listening, the district court's order did not make clear what standard it was applying and it was not clear what evidence it was relying upon. We submit for all those reasons, Judge. It was, this was, this is a case that should be reversed or remanded. All right. Well, thank you both. We will reserve decision.